# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ELIZABETH ANN DEBILZEN, | : | NO. 4:24-CV-02095 |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | (CAMONI, M.J.) |
| FRANK BISIGNANO,[1] | : | |
| *Commissioner of Social Security*, | : | |
| Defendant. | : | |

## <u>MEMORANDUM OPINION</u>

This is an action brought under 42 U.S.C. § 1383(c)(3), seeking judicial review of the final decision of the Commissioner of Social Security denying Plaintiff Elizabeth Debilzen's claim for disability and disability insurance benefits under Title XVI of the Social Security Act. The Court has jurisdiction to review this matter pursuant to 42 U.S.C. § 1383(c)(3) (incorporating 42 U.S.C. § 405(g) by reference). For the reasons stated herein, the Court will affirm the decision of the commissioner.

---

[1] Frank Bisignano became the Commissioner of Social Security on May 7, 2025. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Frank Bisignano should be substituted as the defendant in this suit. No further action is needed to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

## I.   BACKGROUND

### A.   Procedural History

On May 11, 2021, Debilzen applied for supplemental security income benefits under Title XVI of the Social Security Act, alleging disability beginning January 1, 2021. Transcript, Doc. 9-3 at 60. Following an initial denial, Debilzen submitted an appeal, requesting a hearing before an Administrative Law Judge (ALJ). Doc. 9-4 at 16. The ALJ conducted the hearing and determined that Debilzen is not disabled. Doc. 9-2 at 35, 44.

Debilzen filed a request for review of the ALJ's decision, which the Appeals Council denied. *Id.* at 2. The ALJ's decision, therefore, became the final decision of the Commissioner. 42 U.S.C. § 405(g). Pending before this Court is Debilzen's action seeking judicial review of the Commissioner's decision. Complaint, Doc. 1. This case is fully briefed (docs. 13, 17, 18) and ripe for resolution. The parties consented to the jurisdiction of a United States Magistrate Judge to conduct all proceedings in this case, pursuant to 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure 73, including entry of final judgment. Consent Form, Doc. 12.

## B.    The Disability Determination Process

To receive disability benefits under the Social Security Act ("Act"), a claimant must be unable to "engage in any substantial gainful activity by reason of any medically determinable . . . impairment which can . . . result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Under the Act, a claimant is disabled "only if his . . . impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." § 423(d)(2)(A). An impairment is one that "results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." § 423(d)(3).

Social Security regulations provide a "five-step sequential evaluation process" to determine if a claimant is disabled. 20 C.F.R. § 416.920(a)(4). The claimant bears the burden of persuasion through step four, while at step five, the burden shifts to the Secretary to show that the claimant can perform substantial gainful employment other

than the claimant's past relevant work. *Williams v. Sullivan*, 970 F.2d 1178, 1181 (3d Cir. 1992), citing *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987)).

At the first step, the claimant must establish that he has not engaged in substantial gainful activity since the onset of the alleged disability. *See* § 416.920(a)(4)(i). At the second step, claimant must establish that he suffers from a "severe medically determinable . . . impairment that meets the duration requirement . . . ("impairment . . . must have lasted or must be expected to last for a continuous period of at least 12 months")." § 416.920(a)(4)(ii). At the third step, the claimant must provide evidence that his impairment "meets or equals one of our listings in appendix 1." § 416.920(a)(4)(iii). If the claimant demonstrates his impairments meet those listings, he is considered to be disabled. *See id.*; § 416.920(d). If he cannot establish severity of impairment at the third step, the eligibility analysis proceeds to step four in which the ALJ determines whether the claimant's residual functional capacity ("RFC") allows the claimant to continue his previous employment. § 416.920(a)(4)(iv). RFC "is the most [a claimant] can still do despite" impairments. § 416.945(a)(1). To prevail on step four, claimant's

"impairment(s) must prevent [him] from doing . . . past relevant work." § 416.920(f). At the fifth step, the Commissioner bears the burden to demonstrate that the claimant's RFC and his "age, education, and work experience . . . [allows] adjustment to other work." § 416.920(a)(4)(v). If the Commissioner cannot satisfy this burden, the claimant's claim is granted. *See* § 416.920(g).

## C.    The ALJ's Decision

Here, the ALJ determined that Debilzen "has not been under a disability, . . . since May 11, 2021, the date the application was filed." Doc. 9-2 at 36.  The ALJ reached this conclusion after proceeding through the five-step sequential analysis required by the Social Security Act. § 416.920(a)(4)(i)–(v); *see* Doc. 9-2 at 20-36.

At step one, the ALJ determined that Debilzen "has not engaged in substantial gainful activity since May 11, 2021, the alleged onset date." Doc. 9-2 at 20. At step two, the ALJ found that Debilzen has the following severe impairments: degenerative disc and joint disease of the cervical spine, degenerative joint disease of the right shoulder, peripheral vascular disease (PVD), status post angioplasty with stent placement, major depressive disorder (MDD), depression, generalized anxiety

disorder (GAD), anxiety, post-traumatic stress disorder (PTSD), and panic disorder. *Id.* at 21. At step three, the ALJ determined that Debilzen "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in" 20 C.F.R. part 404, subpart P, appendix 1. *Id.* at 25.

Between steps three and four, the ALJ found that Debilzen has the following RFC:

> [T]o perform light work as defined in 20 CFR 416.967(b) except she can occasionally climb stairs and ramps, but never climb ladders, ropes, or scaffolds. She can occasionally balance, stoop, kneel, crouch, and crawl. She must avoid concentrated levels of temperature extremes, humidity, vibration, fumes, and hazards defined as heights. She is limited to unskilled work activity as defined in the Dictionary of Occupational Titles (DOT), which is limited to simple, routine, repetitive tasks, that is low stress defined as only occasional decision making required and only occasional changes in the work setting. She can have no interaction with the public, but can have occasional interaction with coworkers and supervisors.

*Id.* at 29.

At step four, the ALJ determined that Debilzen has no past relevant work. *Id.* at 35. At the fifth and final step, the ALJ determined that considering Debilzen's "age, education, work experience, and residual

functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform." *Id.*

### D.    Issues on Appeal

Debilzen primarily argues that the ALJ's decision, which she says failed to properly evaluate medical opinion evidence, is not supported by substantial evidence. Pl.'s Br., doc. 13 at 3; Pl.'s Reply Br., doc. 18 at 1. Specifically, Debilzen argues that the ALJ failed: (1) to assess the extreme and marked limitations recommended by Dr. Campbell in two mental RFC assessments; and (2) improperly considered her activities of daily living. *See* doc. 13 at 10-11, 14, 19.

The Court, adhering to the deferential standard of review outlined below, will affirm the decision of the Commissioner.

## II.    <u>LEGAL STANDARD</u>

In reviewing the Commissioner's final decision denying a claimant's application for benefits, the Court is limited to determining whether the findings of the final decision-maker are supported by substantial evidence in the record. *See* 42 U.S.C. § 1383(c)(3) (incorporating 42 U.S.C. § 405(g) by reference); *Johnson v. Comm'r of Soc. Sec.*, 529 F.3d 198, 200 (3d Cir. 2008); *Ficca v. Astrue*, 901 F. Supp. 2d 533, 536 (M.D.

Pa. 2012). Under the substantial-evidence standard, a court examines an existing administrative record and asks whether it contains sufficient evidence to support the agency's factual determinations. *Biestek v. Berryhill*, 587 U.S. 97, 102 (2019). Substantial evidence does not mean a large or considerable amount of evidence, but rather "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* at 103; *see also Pierce v. Underwood*, 487 U.S. 552, 565 (1988). Substantial evidence is less than a preponderance of the evidence but more than a mere scintilla. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). A single piece of evidence is not substantial evidence if the ALJ ignores countervailing evidence or fails to resolve a conflict created by the evidence. *Mason v. Shalala*, 994 F.2d 1058, 1064 (3d Cir. 1993). In an adequately developed factual record, however, substantial evidence may be "something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent [the ALJ's decision] from being supported by substantial evidence." *Consolo v. Fed. Mar. Comm'n*, 383 U.S. 607, 620 (1966). "In determining if the Commissioner's decision is supported by substantial evidence the court must scrutinize the record as a whole." *Leslie v.*

*Barnhart*, 304 F. Supp. 2d 623, 627 (M.D. Pa. 2003). In reviewing the record for substantial evidence, "[n]either the district court nor [the Third Circuit] is empowered to weigh the evidence or substitute its conclusions for those of the fact-finder." *Williams*, 970 F.2d at 1182. To reverse the ALJ's findings and decision, the Court "must find that the evidence not only supports [a contrary] conclusion but compels it." *Immigr. & Naturalization Serv. v. Elias-Zacarias*, 502 U.S. 478, 481 n.1 (1992).

The question before the Court, therefore, is not whether Debilzen is disabled, but whether the Commissioner's finding that Debilzen is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law. *See Arnold v. Colvin*, No. 12-2417, 2014 WL 940205, at *1 (M.D. Pa. Mar. 11, 2014) ("[I]t has been held that an ALJ's errors of law denote a lack of substantial evidence."); *Burton v. Schweiker*, 512 F. Supp. 913, 914 (W.D. Pa. 1981) ("The [Commissioner]'s determination as to the status of a claim requires the correct application of the law to the facts."); *see also Wright v. Sullivan*, 900 F.2d 675, 678 (3d Cir. 1990) (noting that the scope of review on legal matters is plenary); *Ficca*, 901 F. Supp. 2d at 536 ("[T]he court has plenary review of all legal issues decided by the

Commissioner."). In determining that question, the Court must evaluate whether the ALJ's decision meets the burden of articulation necessary to enable judicial review; that is, the ALJ must articulate the reasons for his decision beyond stating bare conclusions. *Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 119 (3d Cir. 2000).

## III.  <u>DISCUSSION</u>

The thrust of Debilzen's appeal is that the ALJ failed to evaluate Dr. Campbell's medical opinion at the RFC stage. Doc. 13 at 10-14. She contends that the ALJ's RFC assessment cannot be supported by substantial evidence because the ALJ: (1) failed to properly assess Debilzen's limitations from mental impairments; and (2) improperly considered Debilzen's activities of daily living. *Id.* at 10-11, 19. The Court addresses each argument in turn.

### A.    **Substantial evidence supports the ALJ's medical opinion analysis.**

Debilzen first argues that the ALJ erred when she "unreasonably found that Dr. Campbell's [medical opinion] was not persuasive." *Id.* at 18. The Court finds that the ALJ's RFC assessment and the discussion of Dr. Campbell's medical opinion is well-reasoned and supported by substantial evidence. Doc. 9-2 at 34.

Relevant to the mental impairments, the ALJ first cited to and discussed mental status examinations that have longitudinally shown no deficits in thought content, process, insight, judgment, and mood. *See id.* at 31. Following that review, the ALJ evaluated Dr. Campbell's assessment and found it unpersuasive. *Id.* at 34. The ALJ then explained his reasoning: (1) lack of objective signs or laboratory findings to support the opinion; (2) lack of support by Dr. Campbell's own records which reflect routine and conservative treatment; and (3) no evidence of more intensive mental health intervention or inpatient or partial hospitalization. *Id.* The ALJ, thus, adequately supported her determination and met her burden of articulation. *See Burnett*, 220 F.3d at 119 (explaining that an ALJ must set forth the reasons for his decision beyond a bare conclusion).

Debilzen contends, however, that Dr. Campbell's medical opinion is consistent with and supported by the record. Doc. 13 at 18. In her view, the ALJ does not understand mental health impairments and discounts the "hallmark feature of mental impairments." *Id.* at 15-16. Debilzen's arguments fail to convince. For one, she does not dispute the reasons the ALJ provided for discounting Dr. Campbell's opinion. Nor does she

provide the Court with evidence of treatment that the ALJ failed to consider that supports significant limitations from her mental health impairments. Instead, she protests only that the ALJ should have seen that her treatment history consists of a "highly variable pattern," of good days and bad days. *Id.* at 16. Even if a "highly variable pattern" of treatment supported viewing Debilzen's mental health impairments differently, the Court must follow the substantial evidence standard. Under this standard, even if this Court viewed a factual inquiry differently from the ALJ, the Court is not "empowered to weigh the evidence or substitute its conclusions for those of the fact-finder." *Williams*, 970 F.2d at 1182; *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999). Because the ALJ explained why she found Dr. Campbell's opinion unpersuasive, and that explanation is supported by substantial evidence, the Court finds no error in the ALJ's RFC determination.

**B.    Substantial evidence supports the ALJ's consideration of Debilzen's activities of daily living.**

Debilzen next argues that the ALJ improperly considered activities of daily living in assessing the RFC. *See* doc. 13 at 14, 19. Specifically, she contends that her daily activities prove no more than her "ability to perform basic necessary activities *sporadically*." *Id.* at 19.

Page 12 of 14

It is appropriate for an ALJ to consider the number and type of activities in which a claimant engages when assessing his or her residual functional capacity. *Cunningham v. Comm'r of Soc. Sec.*, 507 F. App'x 111, 118 (3d Cir. 2012). The ALJ is also required to consider a claimant's activities of daily living to assess the severity of a claimant's mental impairments during the five-step analysis. *Id.*, citing 20 C.F.R. pt. 404, subpt. P, app. 1 § 12.00(A), (C)(1).

Here, the ALJ reasonably considered Debilzen's activities of daily living which were far from "sporadic." *See* doc. 9-2 at 28 (listing engagement in a variety of activities including caring for personal needs, preparing meals, doing dishes, cleaning, shopping in store and online, paying bills, watching television, and playing games), 34; *see Horodenski v. Comm'r of Soc. Sec.*, 215 F. App'x 183, 189 n.5 (3d Cir. 2007) (rejecting the notion that performing daily housework constitute sporadic and transitory activities). True, the ability to perform activities of daily living does not automatically equate to the ability to engage in employment on a sustained basis. *Gonzales v. Colvin,* 191 F. Supp. 3d 401, 424 (M.D. Pa. 2015). But the ALJ considered Debilzen's activities of daily living in so far as they substantiate the ALJ's finding of mild limitations resulting

Page 13 of 14

from mental impairments. *See id.* at 29, 32. And this is not a case in which an ALJ accorded too much weight to or decided the RFC based solely on a claimant's activities of daily living. Instead, the ALJ here crafted the RFC based primarily on the medical evidence relating to her impairments and accounted for Deblizen's activities of daily living in assessing the degree of mental limitations and the persuasiveness of medical opinion evidence. *See id.* at 29, 32, 34; *Cunningham*, 507 F. App'x at 118 (finding no error where the ALJ's RFC determination was based on medical evidence and activities of daily living which was not given too much weight).

Because the ALJ's RFC determination is supported by substantial evidence, this Court will affirm.

## IV.    CONCLUSION

Accordingly, the Commissioner's decision will be **AFFIRMED**.

An appropriate order follows.

Date: March 30, 2026                    s/*Sean A. Camoni*
                                        Sean A. Camoni
                                        United States Magistrate Judge